**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Thomas Alec Kidwell, | No. CV-13-0770-TUC-BGM |
| Petitioner, | |
| v. | **ORDER** |
| Charles L. Ryan, *et al.*, | |
| Respondents. | |

Currently pending before the Court is Petitioner Thomas Alec Kidwell's *pro se* Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) (Doc. 1). Respondents have filed a Limited Answer to Petition for Writ of Habeas Corpus ("Answer") (Doc. 16) and Petitioner replied (Doc. 17). The Petition is ripe for adjudication.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

The Arizona Court of Appeal stated the facts[1] as follows:

---

[1] As these state court findings are entitled to a presumption of correctness and Petitioner has failed to show by clear and convincing evidence that the findings are erroneous, the Court hereby adopts these factual findings. 28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S.

In June 2004, six-year-old T. told her babysitter that her father, Kidwell, had sexually abused her.  After calling police, the babysitter, as instructed, brought T. to the Children's Advocacy Center.  A Child Protective Services employee and a Tucson Police Department detective then interviewed and examined T.  A medical doctor also performed "a general physical exam and a more focused genital exam."  The genital exam revealed an area of T.'s vagina was "friable, which means you just barely have to touch it [and] it would start bleeding."  The doctor testified the abnormality was not necessarily a product of abuse, but could have been caused by a bacterial infection or rubbing of the area, and was not consistent with penetration.  In an interview with police, Kidwell denied molesting T.

Kidwell was charged with one count of molestation of a child under the age of fifteen and one count of continuous sexual abuse of a child under the age of fourteen.[1]  On the third day of trial, the state asked the doctor who had examined T. whether T. had made "any spontaneous statements  . . . during [the] exam."  Kidwell objected on hearsay grounds, arguing the statement would not fall within the hearsay exception of Rule 803(4), Ariz. R. Evid., for statements made for purposes of medical diagnosis and treatment.  The trial court sustained the objection.

On the fourth day of trial, after the jury had begun deliberations, it sent a note to the trial court stating that eleven jurors had agreed on a verdict of guilty, but that "one member does not agree & we cannot persuade her to change & agree with us."  After recalling the jury to the courtroom, the court told the jury it could "offer a couple of options" to help the jury resolve the case, including "allow[ing] the attorneys to provide additional evidence" or "additional closing arguments."  The jury foreperson responded that neither he nor the other jurors who agreed with him needed additional evidence, but that the holdout juror "may or may not be swayed by that evidence."  The court instructed the jury to return to the jury room and discuss whether it felt either option the court had offered would be helpful in resolving the impasse.  After doing so, the jury sent a note to the court containing several fact questions, including asking what T. had said to the doctor who had examined her at the Child Advocacy Clinic.

In response to the jury's note, the state asked the trial court to reconsider its ruling excluding T.'s statement to the doctor.  After some discussion, and over Kidwell's continuing objection, the court determined

465, 473–74, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007); *Wainwright v. Witt*, 469 U.S. 412, 426, 105 S.Ct. 844, 853, 83 L.Ed.2d 841 (1985); *Cf. Rose v. Lundy*, 455 U.S. 509, 519, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982).

the statement was admissible under Rule 803(4).  The parties then agreed there was no need to recall the doctor for further testimony because T.'s statement was contained in the doctor's report and the court would read the portion of the report containing T.'s statement to the jury because the doctor had no independent recollection of the examination.  The court told the jury that although neither it nor the parties could respond to most of the jury's requests for information, it had "ruled that a portion of [the examining doctor's] report will be offered into evidence."  The court then read from the report:  "In addition to the history on patient, patient stated dad would rub her private so hard she got an owie."  After additional closing arguments concerning the statement, the jury deliberated further and found Kidwell guilty of child molestation.

---

[1]  The trial court granted Kidwell's motion for judgment of acquittal on the continuous sexual abuse charge.

Answer (Doc. 16), Ariz. Ct. of Appeals, Memorandum Decision 7/31/2008 (Exh. "H") at 1.

On October 20, 2006, a jury found Petitioner guilty of Molestation of Child, A Dangerous Crime Against Children as alleged in Count One of the Indictment.  Answer (Doc. 16), Ariz. Superior Ct., Pima County, Minute Entry 10/20/2006 (Exh. "A") at 2.  On November 27, 2006, Petitioner was sentenced to the presumptive term of seventeen (17) years imprisonment with consecutive community supervision in accordance with A.R.S. § 13-603(I).  Answer (Doc. 16), Ariz. Superior Ct., Pima County, Sentence of Imprisonment/Defendant's Motion for a New Trial 11/27/2006 (Exh. "C") at 2.

### A.    *Direct Appeal*

On November 28, 2006, Petitioner filed his Notice of Appeal.  Answer (Doc. 16), Not. of Appeal 11/28/2006 (Exh. "D").   On February 4, 2008, Petitioner filed his Opening Brief.   Answer (Doc. 16), Appellant's Opening Br. 2/4/2008 (Exh. "E").

Petitioner presented two (2) issues on appeal: 1) whether the jury verdict was coerced, and if so, whether the trial court abused its discretion when it failed to declare a mistrial after the jury sent a note indicating they were at an impasse; and 2) whether [the Victim's] spontaneous statement to Dr. Binkiewicz was admissible under the medical exception to the hearsay rule, and if so, whether the trial court abused its discretion in ruling that the statement was admissible.  Answer (Doc. 16), Exh. "E" at 1.  Relying solely on state law, Petitioner argued that "[t]here was absolutely no testimony from the doctor that the identity of the person who abused T[.] was relevant or 'reasonably necessary' 'to proper diagnosis and treatment' as required by Rule 803(4)[, Arizona Rules of Evidence,] and applicable case law."  *Id.*, Exh. "E" at 14.  As such, Petitioner asserted that the statement "was inadmissible because it did not fall under the medical exception to the hearsay rules."  *Id.*, Exh. "E" at 15.  Again relying solely on state law, Petitioner further argued that "the totality of the circumstances clearly indicate that the Jury's verdict was coerced."  *Id.*, Exh. "E" at 18.  Accordingly, Petitioner sought "to have his conviction overturned."  *Id.*

On July 31, 2008, the Arizona Court of Appeals affirmed Petitioner's conviction.  Answer (Doc. 16), Ariz. Ct. App. Memorandum Decision 7/31/2008 (Exh. "H").  Upon review of state law, the court of appeals recognized that "the identity of the victim's assailant and other statements attributing fault ordinarily are inadmissible under Rule 803(4) because identity and fault usually are not relevant to diagnosis or treatment[;] . . . however, . . . the general rule is inapplicable in many child sexual abuse cases because the abuser's identity is critical to effective diagnosis and treatment."  Answer (Doc. 16),

Exh. "H" at 5 (citing *State v. Robinson*, 153 Ariz. 191, 200, 735 P.2d 801, 810 (1987)) (internal quotations marks omitted).  As such, the court of appeals held that "the trial court did not abuse its discretion in admitting T.'s statement identifying Kidwell." Answer (Doc. 16), Exh. "H" at 8.  Regarding jury coercion, and again relying on state law, the court of appeals recognized that "[w]hen a jury has advised the trial court that it has reached an impasse . . . [the court is permitted to,] in the presence of counsel, inquire of the jurors to determine whether and how court and counsel can assist them in their deliberative process, . . . [and] the judge may direct that further proceedings occur as appropriate."  Answer (Doc. 16), Exh. "H" at 10 (citing Ariz. R. Crim. P. 22.4) (internal quotation marks omitted).  The Arizona Court of Appeals then held that "to the extent Kidwell suggests the court was obligated to declare a mistrial merely because the jury had informed the court it was unable to reach a verdict, he is incorrect."  *Id.*, Exh. "H" at 10 (citing *State v. Cruz*, 218 Ariz. 149, ¶ 115, 181 P.3d 196, 214 (2008)).  The court further held that it found "nothing in the record suggesting the court's actions displaced the jury's independent judgment . . . [and] [t]here was no error."  Answer (Doc. 16), Exh. "H" at 12 (citing *State v. Huerstel*, 206 Ariz. 93, 101 n. 5, 75 P.3d 698, 706 n. 5 (2003)). On September 2, 2008, Petitioner filed his Petition for Review.  Answer (Doc. 16), Pet. for Review (Exh. "I").  On January 7, 2009, the Arizona Supreme Court denied review. *See* Answer (Doc. 16), Ariz. Supreme Ct. Minute Entry 1/7/2009 (Exh. "K").

### B.   *Post-Conviction Relief Proceeding*

On February 4, 2009, Petitioner filed his Notice of Intent to File for Post-Conviction Relief ("PCR").  Answer (Doc. 16), Not. of Intent to File PCR 2/4/2009 (Exh.

"L").  On February 17, 2009, the trial court appointed counsel to Petitioner for the Rule 32 proceeding.  Answer (Doc. 16), Ariz. Superior Ct., Pima County, Notice 2/17/2009 (Exh. "M").  After several extensions of time, as well as a change of counsel, on April 13, 2010, counsel for Petitioner filed a Petition for Post Conviction Relief.  *See* Answer (Doc. 16), Orders re: Extensions of Time & Withdrawal of Counsel (Exh. "M") & Pet. for PCR 4/13/2010 (Exh. "O").  Petitioner asserted that his conviction was based upon insufficient evidence.  *See* Answer (Doc. 16), Exh. "O" at 9–13.  Petitioner further asserted several grounds of ineffective assistance of trial counsel, including: 1) an alleged failure to move that the verdict was contrary to the weight of the evidence pursuant to Rule 24.1(a), (c)(1), Arizona Rules of Criminal procedure; 2) an alleged failure to properly argue in opposition to the State's motion to modify the date range of the indictment; 3) an alleged failure to object to the a duplicitous charge on the jury form; 4) an alleged failure to object to the admissibility of T.'s statement to the examining doctor "on the grounds that it violated Mr. Kidwell's right to cross-examine T[.] on the new evidence and/or in failing to move to open evidence to allow T[.] to be cross-examined on this new evidence[;]" and 5) an alleged failure to object to the Prosecutor's closing argument.  *Id.*, Exh. "O" at 13–24.

On October 26, 2010, the Rule 32 court, relying on Arizona law, "summarily reject[ed] the contention that the conviction was obtained in violation of either the United States or the State Constitution."  Answer (Doc. 16), Ariz. Superior Ct., Pima County, Ruling Re: Petition for Post-Conviction Relief 10/26/2010 (Exh. "U") at 2.  Similarly, the Rule 32 court rejected Petitioner's claim of ineffective assistance relating to Rule

24.1(a),(c)(1), finding that there "was ample evidence to support the conviction." *Id.*, Exh. "U" at 2.  Regarding the claim of ineffective assistance relating to amendment of the indictment, upon review of the jury instructions submitted to the jury, the Rule 32 court held that "[t]he claim of prejudice and inability to prepare is unfounded and rests entirely upon an unsupported assertion." *Id.*, Exh. "U" at 3.  The Rule 32 court ordered an evidentiary hearing regarding the allegation of ineffective assistance "for failing to object that the child molestation charge was duplicitous and resulted in a jury verdict which might not have been unanimous." *Id.*, Exh. "U" at 3–4.  Regarding the ineffective assistance of counsel for an alleged failure to object to the doctor's testimony on Confrontation Clause grounds, the Rule 32 held that Petitioner "failed to demonstrate a colorable basis to his claim that trial counsel's strategy, or tactics, or cross-examination would have been different had the statement been introduced earlier." *Id.*, Exh. "U" at 5. Finally, relying on state law, the Rule 32 court held that Petitioner's claim regarding ineffective assistance of trial counsel related to closing arguments was unsupported. Answer (Doc. 16), Exh. "U" at 5.

On February 9, 2011, Petitioner moved to amend his PCR petition in order "to add the claim that Appellate Counsel was ineffective in failing to raise those issues on Appeal in this matter which could have been, but were not, raised on appeal[.]"  Answer (Doc. 16), Mot. to Amend Pet. for PCR (Exh. "V") at 1.  On March 29, 2011, and evidentiary hearing was held before the Rule 32 court.  *See* Answer (Doc. 16), Ariz. Superior Ct., Pima County, Minute Entry 3/29/2011 (Exh. "W") & Hr'g Tr. 3/29/2011 (Exh. "X").

On April 7, 2011, the Rule 32 court entered its Order regarding Petitioner's PCR

petition.   Answer (Doc. 16), Ariz. Superior Ct., Pima County, Ruling Re: Petition for

Post-Conviction Relief 4/6/2011 (Exh. "Y").   The court reiterated its prior dismissal of

the majority of claims.   *See id.*, Exh. "Y."   The Rule 32 court went on to address

Petitioner's allegation of a duplicitous indictment.   *See id.*, Exh. "Y" at 4.   Based upon

the opinion testimony at the evidentiary hearing of Petitioner's expert witness, the Rule

32 court found that trial counsel had fallen "below prevailing norms of professional

conduct."   *Id.*, Exh. "Y" at 4 (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct.

2052, 80 L.Ed.2d 674 (1984)).   The Rule 32 court, however, further held that Petitioner

"ha[d] made an insufficient showing to demonstrate that with different instructions or

another form of verdict that the outcome of his trial would have been different."   *Id.*, Exh.

"Y" at 5.   As such, the Rule 32 court denied Petitioner's claim.   *Id.*, Exh. "Y" at 5–6.

On July 28, 2011, Petitioner filed his Petition for Review in the Arizona Court of

Appeals.   *See* Answer (Doc. 16), Pet. for Review 7/28/2011 (Exh. "Z").   Petitioner

reasserted three (3) grounds for relief raised in his PCR petition, including: 1) whether

"trial counsel was ineffective for failing to properly challenge the state's request to

amend the Indictment to modify the date range of the molestation charge[;]" 2) whether

trial counsel was ineffective for failing to object to the jury verdict form; and 3) whether

trial counsel was ineffective for failing to argue the Confrontation Clause with regard to

T.'s statements to the doctor.   *Id.*, Exh. "Z" at 2, 9–19.   On November 9, 2011, the

Arizona Court of Appeals granted review, but denied relief.   Answer (Doc. 16), Ariz. Ct.

App. Order 11/9/2011 (Exh. "AA").   Regarding Petitioner's claim that trial failed to

properly argue against amending the indictment, the court of appeals noted that "trial

counsel did object, on this very ground, to the state's request to modify the indictment." *Id.*, Exh. "AA" at 4.  The court went on to hold that Petitioner failed "to posit any other reason we should find counsel's objection deficient[,] . . . [and] fails to address the trial court's specific finding that he suffered no prejudice[.]"  *Id.*, Exh. "AA" at 4.  The court of appeals determined that the trial court did not abuse its discretion as to this claim.  *Id.*, Exh. "AA" at 5.  The Arizona Court of Appeals further affirmed the Rule 32 court's decision regarding a duplicitous charge.  *Id.*, Exh. "AA" at 5–6.  Despite a finding that trial and appellate counsel fell below the prevailing norms of professional conduct, Petitioner failed to show prejudice as required under *Strickland*.[2]  Finally, the court of appeals noted that Petitioner did not "present any meaningful analysis relevant to an alleged violation of the Confrontation Clause."  Answer (Doc. 16), Exh. "AA" at 8.  "Specifically, [Petitioner] fails to address whether T.'s statement could even be considered 'testimonial' in nature, as required to implicate that constitutional protection." *Id.*, Exh. "AA" at 8 (citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004)).  As such, the court of appeals held that Petitioner "failed to establish the trial court abused its discretion in denying this claim."  *Id.*, Exh. "AA" at 8.

On December 8, 2011, Petitioner filed his Petition for Review.  Answer (Doc. 16), Pet.'s Pet. for Review 12/8/2011 (Exh. "BB").  On April 24, 2012, the Arizona Supreme Court denied review.  Answer (Doc. 16), Ariz. Supreme Ct., Minute Entry 4/24/2012 (Exh. "CC").

. . .

---

[2] *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

### D.      The Instant Habeas Proceeding

On August 1, 2013, Petitioner filed his Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) (Doc. 1).  Petitioner claims five (5) grounds for relief.  First, Petitioner argues that the "spontaneous statement to doctor was inadmissible under the medical exception to the hearsay rule."  Petition (Doc. 1) at 6.  Second, Petitioner alleges that "[t]he jury verdict was coerced" in violation of his Fourteenth Amendment rights.  *Id.* at 7.  Third, Petitioner claims that "[t]he evidence was insufficient to support the jury's verdict of guilty [sic] of molestation of a child" in violation of his Fourteenth Amendment rights.  *Id.* at 8.  Fourth, Petitioner alleges ineffective assistance of trial counsel for an alleged failure to "properly challenge the State's request to amend the date range of the indictment which led to a . . . non-unanimous guilty verdict" in violation of Petitioner's Sixth and Fourteenth Amendment rights.  *Id.* at 9.  Fifth, Petitioner asserts ineffective assistance of trial counsel for an alleged failure "to object to the lack of specificity in the jury verdict form and . . . to the prosecutor's improper prejudicial closing."  *Id.* at 10.  On January 27, 2014, Respondents filed their Answer (Doc. 16).  On February 28, 2014, Petitioner replied (Doc. 17).

## II.    STANDARD OF REVIEW

### A.  In General

The federal courts shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws of treaties of the United*

1   *States*." 28 U.S.C. § 2254(a) (emphasis added).  Moreover, a petition for habeas corpus

2   by a person in state custody:

3

4       shall not be granted with respect to any claim that was adjudicated on the
        merits in State court proceedings unless the adjudication of the claim – (1)

5       resulted in a decision that was contrary to, or involved an unreasonable
        application of, clearly established Federal law, as determined by the

6       Supreme Court of the United States; or (2) resulted in a decision that was
        based on an unreasonable determination of the facts in light of the evidence

7       presented in the State court proceeding.

8

9   28 U.S.C. § 2254(d); *see also Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1398,

10  179 L.Ed.2d 557 (2011).  Correcting errors of state law is not the province of federal

11  habeas corpus relief.  *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116

12  L.Ed.2d 385 (1991).  Ultimately, "[t]he statute's design is to 'further the principles of

13  comity, finality, and federalism.'"  *Panetti v. Quarterman*, 551 U.S. 930, 945, 127 S.Ct.

14  2842, 2854, 168 L.Ed.2d 662 (2007) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 337,

15  123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)).  Furthermore, this standard is difficult to meet

16  and highly deferential "for evaluating state-court rulings, [and] which demands that state-

17  court decisions be given the benefit of the doubt."  *Pinholster*, 131 S.Ct. at 1398

18  (citations and internal quotation marks omitted).

19

20      The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat.

21  1214, mandates the standards for federal habeas review.  *See* 28 U.S.C. § 2254.  The

22  "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims

23  have been adjudicated in state court." *Burt v. Titlow*, — U.S. —, 134 S.Ct. 10, 16, 187

24  L.Ed.2d 348 (2013).  Federal courts reviewing a petition for habeas corpus must

25  "presume the correctness of state courts' factual findings unless applicants rebut this

presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473–74, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007) (citing 28 U.S.C. § 2254(e)(1)). Moreover, on habeas review, the federal courts must consider whether the state court's determination was unreasonable, not merely incorrect. *Id.*, 550 U.S. at 473, 127 S.Ct. at 1939; *Gulbrandson v. Ryan*, 738 F.3d 976, 987 (9th Cir. 2013). Such a determination is unreasonable where a state court properly identifies the governing legal principles delineated by the Supreme Court, but when the court applies the principles to the facts before it, arrives at a different result. *See Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Casey v. Moore*, 386 F.3d 896, 905 (9th Cir. 2004). "AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt*, 134 S.Ct. at 10 (quoting *Harrington*, 562 U.S. at 103, 131 S.Ct. at 786–87) (alterations in original).

## B. Exhaustion of State Remedies

Prior to application for a writ of habeas corpus, a person in state custody must exhaust all of the remedies available in the State courts. 28 U.S.C. § 2254(b)(1)(A). This "provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court." *Rose v. Lundy*, 455 U.S. 509, 520, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982). As such, the exhaustion doctrine gives the State "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct.

1347, 1349, 158 L.Ed. 2d 64 (2004) (internal quotations omitted).  Moreover, "[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose*, 455 U.S. at 518, 102 S.Ct. at 1203 (internal citations omitted).  This upholds the doctrine of comity which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." *Id.* (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950)).

Section 2254(c) provides that claims "shall not be deemed . . . exhausted" so long as the applicant "has the right under the law of the State to raise, by any available procedure the question presented."  28 U.S.C. § 2254(c).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).  The fair presentation requirement mandates that a state prisoner must alert the state court "to the presence of a federal claim" in his petition, simply labeling a claim "federal" or expecting the state court to read beyond the four corners of the petition is insufficient. *Baldwin v. Reese*, 541 U.S. 27, 33, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004) (rejecting petitioner's assertion that his claim had been "fairly presented" because his brief in the state appeals court did not indicate that "he was complaining about a violation of federal law" and the justices having the opportunity to read a lower court decision addressing the federal claims was not fair presentation); *Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal due process issue in state court because

petitioner presented claim in state court only on state grounds).  Furthermore, in order to "fairly present" one's claims, the prisoner must do so "in each appropriate state court." *Baldwin*, 541 U.S. at 29, 124 S.Ct. at 1349.  "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state."  *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (9th ed. 1998)).

In Arizona, however, for non-capital cases "review need not be sought before the Arizona Supreme Court in order to exhaust state remedies."  *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *see also Crowell v. Knowles*, 483 F.Supp.2d 925 (D. Ariz. 2007); *Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998).  Additionally, the Supreme Court has further interpreted § 2254(c) to recognize that once the state courts have ruled upon a claim, it is not necessary for an applicant to seek collateral relief for the same issues already decided upon direct review.  *Castille v. Peoples*, 489 U.S. 346, 350, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989).

### C.  Procedural Default

"A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."  *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 650 (1991).  Moreover, federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent

of the federal question and adequate to support the judgment." *Id.*, 501 U.S. at 728, 111 S.Ct. at 2254. This is true whether the state law basis is substantive or procedural. *Id.* (citations omitted). Such claims are considered procedurally barred from review. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

The Ninth Circuit Court of Appeals explained the difference between exhaustion and procedural default as follows:

> The exhaustion doctrine applies when the state court has never been presented with an opportunity to consider a petitioner's claims and that opportunity may still be available to the petitioner under state law. In contrast, the procedural default rule barring consideration of a federal claim applies only when a state court has been presented with the federal claim, but declined to reach the issue for procedural reasons, or if it is clear that the state court would hold the claim procedurally barred. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002) (internal quotation marks and citations omitted). Thus, in some circumstances, a petitioner's failure to exhaust a federal claim in state court may *cause* a procedural default. *See Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002) ("A claim is procedurally defaulted 'if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

*Cassett v. Stewart*, 406 F.3d 614, 621 n. 5 (9th Cir. 2005). Thus, a prisoner's habeas petition may be precluded from federal review due to procedural default in two ways. First, where the petitioner presented his claims to the state court, which denied relief based on independent and adequate state grounds. *Coleman*, 501 U.S. at 728, 111 S.Ct. at 2254. Federal courts are prohibited from review in such cases because they have "no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the

judgment and would therefore be advisory." *Id.* Second, where a "petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1, 111 S.Ct. at 2557 n.1 (citations omitted). Thus, the federal court "must consider whether the claim could be pursued by any *presently available* state remedy." *Cassett*, 406 F.3d at 621 n.6 (quoting *Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998)) (emphasis in original).

Where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result. *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice); *see also Smith v. Murray*, 477 U.S. 527, 534, 106 S.Ct. 2661, 2666, 91 L.Ed.2d 434 (1986) (recognizing "that a federal habeas court must evaluate appellate defaults under the same standards that apply when a defendant fails to preserve a claim at trial."). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims of ineffective assistance of counsel, [as such] there is no basis on which to address the merits of his claims."). In addition to cause, a habeas petitioner

must show actual prejudice, meaning that he "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494, 106 S.Ct. at 2648 (emphasis in original) (internal quotations omitted). Without a showing of both cause and prejudice, a habeas petitioner cannot overcome the procedural default and gain review by the federal courts. *Id.*, 106 S.Ct. at 2649.

The Supreme Court has recognized, however, that "the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct 'a fundamental miscarriage of justice.'" *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (quoting *Engle v. Isaac*, 456 U.S. 107, 135, 102 S.Ct. 1558, 1572–73, 71 L.Ed.2d 783 (1982)).  "The fundamental miscarriage of justice exception is available 'only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence.'" *Herrara v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 862, 122 L.Ed.2d 203 (1993) (emphasis in original) (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986)).  Thus, "'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrara*, 506 U.S. at 404, 113 S.Ct. at 862.  Further, in order to demonstrate a fundamental miscarriage of justice, a habeas petitioner must "establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense."  28 U.S.C. § 2254(e)(2)(B).

- 17 -

In Arizona, a petitioner's claim may be procedurally defaulted where he has waived his right to present his claim to the state court "at trial, on appeal or in any previous collateral proceeding." Ariz. R. Crim. P. 32.2(a)(3). "If an asserted claim is of sufficient constitutional magnitude, the state must show that the defendant 'knowingly, voluntarily and intelligently' waived the claim." *Id.*, 2002 cmt. Neither Rule 32.2. nor the Arizona Supreme Court has defined claims of "sufficient constitutional magnitude" requiring personal knowledge before waiver. *See id.*; *see also Stewart v. Smith*, 202 Ariz. 446, 46 P.3d 1067 (2002). The Ninth Circuit Court of Appeals recognized that this assessment "often involves a fact-intensive inquiry" and the "Arizona state courts are better suited to make these determinations." *Cassett*, 406 F.3d at 622.

## III.  STATUTE OF LIMITATIONS

### A.  *Timeliness*

As a threshold matter, the Court must consider whether Petitioner's petition is barred by the statute of limitation. *See White v. Klizkie*, 281 F.3d 920, 921–22 (9th Cir. 2002). The AEDPA mandates that a one-year statute of limitations applies to applications for a writ of habeas corpus by a person in state custody. 28 U.S.C. § 2244(d)(1). Section 2244(d)(1) provides that the limitations period shall run from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by the State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005).  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).

The other subsections being inapplicable, Petitioner must have filed his habeas petition within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A); *see also McQuiggin v. Perkins*, – U.S. –, 133 S.Ct. 1924, 1929, 185 L.Ed.2d 1019 (2013).  Petitioner's judgment became final after the expiration of the ninety (90) day period to petition for a writ of certiorari from the Supreme Court of the United States.  *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999).  On January 7, 2009, the Arizona Supreme Court denied review of Petitioner's direct appeal.  *See* Answer (Doc. 16), Ariz. Supreme Ct. Minute Entry 1/7/2009 (Exh. "K").

As such, pursuant to the AEDPA, Petitioner's one-year limitation period expired, absent tolling, on April 7, 2009.  *See Bowen*, 188 F.3d at 1159.  Petitioner filed his Petition (Doc. 1) on August 1, 2013.  Therefore, absent tolling, the Petition (Doc. 1) is

untimely.

**B.      *Statutory Tolling of the Limitations Period***

The limitations period is tolled during the time in "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" 28 U.S.C. § 2244(d)(2); *Allen*, 552 U.S. at 4, 128 S.Ct. at 3.  An application for State post-conviction relief is "'properly filed' when its deliver and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8, 121 S.Ct. 361, 364, 148 L.Ed.2d 213 (2000). Statutory tolling of the limitations period ends "[a]fter the State's highest court has issued its mandate or denied review, [because] no other state avenues for relief remain open." *Lawrence v. Florida*, 549 U.S. 327, 332, 127 S.Ct. 1079, 1083, 166 L.Ed.2d 924 (2007); *see also Hemmerle v. Schriro*, 495 F.3d 1069, 1077 (9th Cir. 2007) (collateral proceeding "determined" when the Arizona Supreme Court denied petition for review).

"[I]n Arizona, post-conviction 'proceedings begin with the filing of the Notice.'" *Hemmerle*, 495 F.3d at 1074 (quoting *Isley v. Arizona Dept. of Corrections*, 383 F.3d 1054 (9th Cir. 2004)).  Petitioner filed his Notice of Intent to File for Post-Conviction Relief on February 4, 2009.  Answer (Doc. 16), Exh. "L."  This PCR notice was "properly filed," and therefore tolled AEDPA's one-year statute of limitations.  The limitations period remained tolled during the pendency of Petitioner's PCR proceedings. On April 24, 2012, the Arizona Supreme Court denied review of Petitioner PCR petition. Answer (Doc. 16), Ariz. Supreme Ct., Minute Entry 4/24/2012 (Exh. "CC").  The new deadline for Petitioner's habeas petition was April 24, 2013; however, it was not filed

until August 1, 2013.

Petitioner argues that the limitations period should be tolled until the Arizona Court of Appeals issued its Mandate after the Arizona Supreme Court's denial of review. Pet.'s Reply (Doc. 17) at 2 & Ariz. Ct. of Appeals Mandate 9/4/2012 (Exh. "A").  "Under the Arizona rules, [however,] there is no requirement for a mandate to issue from a denial of review."  *Ramon v. Ryan*, 2010 WL 3564819, *7 (D. Ariz.).  Moreover, "an application for state postconviction review no longer exists" upon the state supreme court's denial of review.  *Lawrence*, 549 U.S. at 332, 127 S.Ct. at 1083.  Accordingly, Petitioner's Petition (Doc. 1) is untimely.

### C.  *Equitable Tolling of the Limitations Period*

The Supreme Court of the United States has held "that § 2244(d) is subject to equitable tolling in appropriate cases."  *Holland v. Florida*, – U.S. – , 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010).  The Ninth Circuit Court of Appeals "will permit equitable tolling of AEDPA's limitations period 'only if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time.'" *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) (*quoting Calderon v. United States Dist. Court (Kelly)*, 163 F.3d 530, 541 (9th Cir. 1998) (en banc), *cert. denied*, 526 U.S. 1060, 119 S.Ct. 1377, 143 L.Ed.2d 535 (1999) (citations omitted)).  Moreover, Petitioner "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 1814, 161 L.Ed.2d 669 (2005); *see also Holland*, 130 S.Ct. at 2562 (quoting *Pace*).

Here, Petitioner has failed to meet his burden.  The record before this Court is devoid of any evidence to demonstrate that Petitioner is entitled to equitable tolling.  As such, Petitioner has failed to meet the "very high threshold" of establishing that extraordinary circumstances beyond his control made it impossible for him to timely file a habeas petition *and* that those extraordinary circumstances were the cause of his untimeliness.  *United States v. Battles*, 362 F.3d 1195, 1197 (9th Cir. 2004).   Therefore, Petitioner's habeas petition is untimely.

## IV.   CONCLUSION

Based upon the foregoing, the Court finds that Petitioner's Petition (Doc. 1) is untimely and shall be denied.

Accordingly, IT IS HEREBY ORDERED that:

1)   Petitioner Thomas Alec Kidwell's *pro se* Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) (Doc. 1) is DENIED;

2)   This matter is DISMISSED with prejudice; and

3)   The Clerk of Court shall enter judgment and close its file in this matter.

Dated this 10th day of August, 2016.

Honorable Bruce G. Macdonald
United States Magistrate Judge